AMERICAN SUGAR REFINING COMPANY, Appellant, *v.* CHARLES H. FANCHER, Assignee, Respondent.

Where a sale of personal property was induced by fraud on the part of the vendee, and the property has again been sold by the latter, and the proceeds of such sale, in the form of notes or credits, are identified specifically and beyond question in the hands of the latter, or in the possession of his voluntary assignee, a court of equity has power, in the absence of any adequate legal remedy, to reach such proceeds and apply them for the benefit of, and to so·far indemnify, the defrauded vendor.

In respect to such a remedy an assignee, for the benefit of creditors of the fraudulent vendee, stands in no other or better position than his assignor.

Where, therefore, in an equitable action brought by a vendor of goods sold on credit to reach the proceeds of sub-sales of the goods, it appeared that the sale was induced by fraudulent representations on the part of the vendees, who were at the time hopelessly insolvent; that the latter sold to various customers, in the ordinary course of business, portions of the goods on credit, and thereafter made an assignment to defendant for the benefit of creditors, when the vendor, for the first time, discovered the fraud; that the claims against the sub-vendees were among the assets that passed by the assignment, and that these claims were collected by the assignee after the assignment and after notice from the plaintiff of rescission of the original sale for the fraud, *held,* that the action was maintainable, and that a judgment against the assignee, directing an accounting and payment by him of the proceeds of such collections, was proper.

*Am. Sug. Ref. Co.* v. *Fancher* (81 Hun, 56), reversed.

(Argued March 22, 1895; decided April 9, 1895.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made at the October term, 1894, which reversed an interlocutory judgment in favor of plaintiff, entered upon the report of a referee and the final judgment entered thereon, and ordered a new trial.

This action was brought by plaintiff against defendant, as assignee, for the benefit of creditors of the firm of C. Burkhalter & Co., to recover the proceeds of the re-sale 'of certain goods alleged to have been fraudulently purchased from plaintiff by said firm.

The interlocutory judgment adjudged defendant a trustee of the goods mentioned in the complaint, and of the proceeds of such goods as had come into his hands as assignee, and that he account for, transfer and pay over to plaintiff all of said proceeds; a reference was ordered for the purpose of the accounting. A stipulation was afterwards entered into between the parties as to the amount of the proceeds received by defendant, and a final judgment in plaintiff's favor in accordance therewith was rendered.

The further facts, as far as material, are stated in the opinion.

*Charles E. Hughes, Arthur C. Rounds* and *Frederic R. Kellogg* for appellant. The plaintiff, as a defrauded vendor, is entitled to recover from the vendee or his voluntary transferee the proceeds of the re-sale of the property fraudulently purchased. (*Partridge* v. *Rubin,* 15 Daly, 344; *Jackson* v. *Cadwell,* 1 Cow. 622; 2 Am. & Eng. Ency. of Law, 444; *N. T. Co.* v. *Gleason,* 77 N. Y. 408; *Talbot* v. *Bank of Rochester,* 1 Hill, 293, 295; *Comstock* v. *Hier,* 73 N. Y. 269; Keener on Quasi Contracts, 159, 170, *et seq.; Rothschild* v. *Mack,* 115 N. Y. 1; *Cutts* v. *Phelan,* 2 How. 376; *People* v. *Wood,* 121 N. Y. 522; *P. A. Co.* v. *N. S. & L. Bank,* 23 Abb. [N. C.] 172; *Abbotts* v. *Barry,* 2 Brod. & Bing. 369; *Browning* v. *Bancroft,* 8 Met. 278; *Roberts* v. *Ely,* 113 N. Y. 131; *Varet* v. *N. Y. Ins. Co.,* 7 Paige, 567; *Trevelyan* v. *White,* 1 Beav. 589; *Cheney* v. *Gleason,* 117 Mass. 557; *Hammond* v. *Pennock,* 61 N. Y. 145; *In re Hallett,* 13 L. R. [Ch. Div.] 696; *Holmes* v. *Gilman,* 138 N. Y. 369; *Baker* v. *Bank,* 100 id. 31; *Newton* v. *Porter,* 69 id. 133; 2 Pom. Eq. Juris. §§ 278, 1053; Story's Eq. Juris. § 1265; Bispham's Eq. § 91; Perry on Trusts, § 166; *Small* v. *Attwood,* Younge, 507; *I. & T. Bank* v. *Peters,* 123 N. Y. 272; *La Comité* v. *Bank,* 1 Cab. & El. 87.) The goods were obtained from the plaintiff by larceny, and upon this ground the plaintiff is entitled to recover their proceeds from the voluntary assignee of the persons guilty of the theft. (Penal Code, §§ 528, 544; 2 R. S. 677, § 53; 1 R. L. 1813, 410, § 13; 30 George II, chap. 24; *People* v. *Haynes,* 11 Wend. 557; *Robinson* v. *Dauchy,* 3 Barb. 20; 33 Henry VIII, chap. 1; 30 George II, chap. 24; *Mowrey* v. *Walsh,* 8 Cow. 238; *Andrew* v. *Dieterich,* 14 Wend. 31; *Peabody* v. *Fenton,* 3 Barb. Ch. 451; *Fassett* v. *Smith,* 23 N. Y. 252; *Ross* v. *People,* 5 Hill, 254; *Zink* v. *People,* 77 N. Y. 114; *Thorne* v. *Turck,* 94 id. 90; *People* v. *Lyon,* 99 id. 210; *People* v. *Dumar,* 106 id. 502; *Benedict* v. *Williams,* 48 Hun, 123; Code Crim. Pro. §§ 685–687; 21 Henry VIII, chap. 11; 24 & 25 Vic. chap. 96, § 100; *Bentley* v. *Vilmont,* L. R. [12 App. Cas.] 471; *Queen* v. *Justices,* L. R. [17 Q. B. D.] 598; 18 id. 314; *Newton* v. *Porter,* 69 N. Y. 133; *Riggs* v. *Palmer,* 115 id. 506.)

*James B. Dill* for respondent. The plaintiff is entitled to no preference over all the other creditors of the insolvent estate on the ground that his contract was tainted with fraud. (*S. B. L. Co.* v. *Ott,* 142 U. S. 623; *Heinmann* v. *Kapp,* 9 N.

Y. S. R. 69, 71; *Tim* v. *Smith*, 13 Abb. [N. C.] 31.) The plaintiff cannot maintain this action because it failed to rescind the contract before the vendees sold the goods and before the assignment was made. (*Daw* v. *Sanborn*, 3 Allen, 181; *Kline* v. *Baker*, 99 Mass. 253; *Wise* v. *Grant*, 140 N. Y. 593; *Bosley* v. *N. M. Co.*, 123 id. 550.) The fraud of the Burkhalters did not make the assignee a trustee *ex maleficio*. (Dwight on Personal Property, 423; *Newham* v. *May*, 13 Price, 749; *Hammond* v. *Pennock*, 61 N. Y. 145; *Buzzard* v. *Houston*, 119 U. S. 347; *Suter* v. *Mathews*, 115 Mass. 253; *Carpenter* v. *Danforth*, 52 Barb. 581; *Holmes* v. *Gilman*, 138 N. Y. 369.) The Penal Code, in characterizing as a crime and providing a punishment for obtaining goods under false pretenses, by no means changed the well-established rules of law as applicable to contracts. (*Wise* v. *Grant*, 140 N. Y. 593; *Goodwin* v. *Wertheimer*, 99 id. 149; *Benedict* v. *Williams*, 47 Hun, 123; Dwight on Personal Property, 423.) Equity will not turn a completed sale of chattels into a trust *ex maleficio*. (*Bangne Franco-Egyptienne* v. *Brown*, 34 Fed. Rep. 162.)

Andrews, Ch. J.  This case presents a question of considerable practical importance.  It relates to the equitable jurisdiction of the court under special circumstances to follow proceeds of personal property in the hands of a fraudulent vendee or his general assignee for the benefit of creditors at the suit of a defrauded vendor, who by false pretenses was induced to part with the property upon credit, the proceeds sought to be reached being the sums due from sub-vendees of the fraudulent purchaser arising on re-sales by him made before the discovery by the plaintiff of the fraud.  The facts upon which the question arises are substantially conceded and are free from complication.  Between the 20th day of September, 1892, and the 20th day of October following, the plaintiff sold and delivered to the mercantile firm of C. Burkhalter & Co., doing business in the city of New York, sugars of various qualities on credit for the price in the aggregate of

$19,121.41, no part of which has been paid, the last sale having been made October 19th, 1892. On the next day, the firm being insolvent and owing debts greatly in excess of its assets, made a general assignment to the defendant for the benefit of its creditors. Among the assigned assets were a portion of the sugars sold by the plaintiff to the firm, which he replevied from the assignee, but the firm, prior to the assignment, had sold to numerous persons, customers of the firm, in the ordinary course of trade, portions of the sugars on credit and claims held by the firm against the sub-vendees arising out of such sales, exceeding in the aggregate the sum of $10,000, were among the assets which passed by the assignment. These claims were collected by the assignee after the assignment, and (excepting a small sum) after notice had been served by the plaintiff on the assignee that it rescinded the original sale for fraud, which notice was accompanied by a demand for the sugars then in the possession of the assignee, and for an accounting and the delivery to the plaintiff of the outstanding claims against the customers of Burkhalter & Co. in their hands for the sugars sold by the firm as above stated. The assignee declined to accede to the demand made. On the trial the parties by stipulation fixed the amount of the claims for sugars sold which had come to the hands of the assignee, and which had been collected by him.

The fraud of Burkhalter & Co. was not controverted. It was shown that the sales were induced by a gross misrepresentation in writing made by one of the members of the firm to the plaintiff as to the solvency of the firm, made on or about September 20th, 1892, within thirty days before the assignment, and when the firm was owing several hundred thousand dollars more than the value of its whole assets.

The case presented is singularly free from any uncertainty in respect to the facts upon which the equitable jurisdiction to follow the proceeds of the sugars is claimed. They are definite and ascertained, but it is insisted that the court is impotent to give relief by way of subjecting the choses in

action or their proceeds, representing the sugars, to a lien in favor of the defrauded vendor, or to adjudge that they shall be applied in partial recompense and restitution for the property so wrongfully obtained, because, as is claimed, such relief is not in any such case within the scope of the powers of courts of equity as heretofore defined and exercised, and for the further reason that new rights have intervened by reason of the assignment. The fraud of Burkhalter & Co. was, as we have said, admitted. They are hopelessly insolvent, and were so at the time they took the plaintiff's goods. They disposed of a large part of the sugars before the plaintiff became cognizant of the fraud. The plaintiff was only apprised of it after the assignment was made. The remedy at law upon the contract against the fraudulent and insolvent purchaser is, under the circumstances, ineffectual. The pursuit of the property, except the small part of it which was unsold and passed to the assignee, is impracticable. If it could yet be found unconsumed and capable of identification, the multiplicity of suits which would be rendered necessary to reclaim it would make the remedy expensive, burdensome and inadequate. The identification of the proceeds sought to be reached is complete and unquestioned. It is not claimed that the credits or the money into which they have been converted are not the very proceeds of sugars of which the plaintiff was defrauded.

The jurisdiction of a court of equity to follow the proceeds of property taken from the true owner by felony, or misapplied by an agent or trustee, and converted into property of another description, and to permit the true owner to take the property in its altered state as his own, or to hold it as security for the value of the property wrongfully taken or misapplied, or, in case the original property or its proceeds have been mingled with that of the wrongdoers in the purchase of other property, to have a charge declared in favor of the person injured to the extent necessary for his indemnity, so long as the rights of *bona fide* purchasers do not intervene, has been frequently exerted and is a jurisdiction founded upon the plainest principles of reason and justice. The case of

*Newton* v. *Porter* (69 N. Y. 133) is an illustration of the application of this principle in a case of the larceny of negotiable bonds, sold by the thieves, in which the court subjected securities in which they invested the money, and which they had transferred with notice to third persons as security for services to be rendered, to a charge in favor of the owner of the stolen bonds. The cases upon this head are very numerous, where there has been a misapplication of trust funds by trustees, or persons standing in a fiduciary relation, and the money or property misapplied has been laid out in land or converted into other species of property. The court in such cases lays hold of the substituted property and follows the original fund, through all the changes it has undergone, until the power of identification is lost or the rights of *bona fide* purchasers stop the pursuit, and holds it in its grasp to indemnify the innocent victim of the fraud. And even in case of money, which is said to have no earmark, its identity will not be deemed lost, though it is mingled with other money of the wrongdoer, if it can be shown that it forms a part of the general mass. (*Pennell* v. *Deffell*, 4 DeG., M. & G. 372: *In re Hallett*, 13 Ch. Div. 696; *Holmes* v. *Gilman*, 138 N. Y. 369.) In the cases of stolen property, or of misapplication by a trustee or agent of the funds of the principal or *cestui que trust*, the title of the real owner of the property has been in most cases lost, without his consent, and the court, by a species of equitable substitution, repairs, as far as practicable, the wrong, and prevents the wrongdoer from profiting by his fraud. And, indeed, courts of law, borrowing the equitable principle, in cases of misappropriation by agents, vest in the principal at his election the legal title to a chattel or security in the hands of the agent, purchased exclusively by the application of the embezzled or misappropriated fund. (*Taylor* v. *Plumer*, 3 M. & S. 562.)

It is at this point that the controversy in the present case commences, and the divergence arises which has led to this litigation. It is claimed, on behalf of the defendant, that courts of equity in commercial cases, where the claim of the

plaintiff originates in a fraud in the sale of personal property, does not undertake to follow proceeds in the hands of the wrong doer, but that the defrauded party having consented to part with his title, is remitted exclusively to such legal remedies as are given for the redress of the wrong. The jurisdiction of courts of equity in cases of trust or agency, or cases of like character, it is insisted, is founded upon the ancient jurisdiction of these courts over trusts and fiduciary relations, and has not been and ought not to be extended beyond these cases. It is very true that trusts and trust relations are peculiarly cognizable in equity, and have been so cognizable from the earliest period of equitable jurisprudence. But it is to be said that these are but branches of the larger jurisdiction over frauds, which equity abhors, and of which it has cognizance admittedly in many cases not connected with technical trusts or agency. It cannot be denied that the protection of *cestui que trusts* against frauds of the trustee is an object of peculiar solicitude in courts of equity. They, in many cases, are incapable, by reason of age, inexperience or other incapacity, from looking out for themselves, and the court stands in the attitude of guardian of their interests. But, as has been said, a court of equity does not restrict its remedial processes to the aid of the helpless or the ignorant. It embraces within its view the general claims included within what are called *quasi* trusts, and intervenes to prevent violations of equitable duty by whomsoever committed or whoever may suffer from the violation. It goes altogether outside of trust relations in many cases to prevent fraud, or to compel a restoration of property obtained by fraud. The exercise of the jurisdiction to set aside fraudulent transfers of real or personal property made in fraud of creditors is familiar. And the jurisdiction is most beneficially invoked in cases of private fraud to rescind transfers of real estate procured by fraudulent representations, and to restore to the defrauded vendor the title of which he has been defrauded. It often happens in cases of transfers of real estate procured by fraud that, before the action is brought or

the plaintiff is apprised of the fraud, the fraudulent vendee has disposed of the land in whole or in part, or has created liens thereon in favor of the *bona fide* purchasers for value. In such cases the court will mould the relief to suit the circumstances, and will, at the election of the plaintiff, rescind the contract and compel a re-conveyance of the part of the land still remaining in the hands of the vendor, and compel the wrongdoer to account for the proceeds of the land sold, or award compensation in damages. The court in many cases resorts to the fiction of a trust, and, by construction, adjudges that the proceeds in the hands of the wrongdoer are held by him as trustee of the plaintiff. This was the exact nature of the relief granted in the case of *Trevelyan* v. *White* (1 Beav. 589), as appears by the recital of the decree in the opinion of the master of the rolls, where part of the estate had been sold by the fraudulent vendee. In *Cheney* v. *Gleason* (117 Mass. 557) a bill was filed by the defrauded vendor of real estate to reach a mortgage taken by the vendee on the land on a re-sale by him, and the court sustained the bill and granted the relief. In *Hammond* v. *Pennock* (61 N. Y. 145) the court rescinded, at the instance of the plaintiff, a contract for the exchange of real and personal property, owned by the plaintiff, for a farm of the defendant in Michigan, which had been consummated on the plaintiff's part by a conveyance and transfer, the contract and conveyance having been obtained by the defendant by fraudulent representations; and the defendant having, after the conveyance to him, contracted to sell part of the land conveyed to him by the plaintiff, the court adapted the relief to the circumstances and rescinded the conveyance so far as practicable, and adjudged that the defendant account for the proceeds of the personal property included in the sale. If the jurisdiction exercised by courts of equity in respect to undoing fraudulent conveyances of real estate and following the proceeds in the hands of the fraudulent grantee, appertains in like manner and degree to sales of personalty, it would seem that the plaintiff in the present case was entitled to relief.

The fact that before the action was brought, Burkhalter & Co. had made a general assignment for the benefit of creditors to the defendant is no obstacle to the relief, if, except for the assignment, the court would have interposed, on the prayer of the plaintiff, its preventive and other remedies, to have enabled the plaintiff to reach the unpaid claims against the sub-vendees. As assignee for creditors he is not a purchaser for value, and stands in no other or better position than his assignor as respects a remedy to reach the proceeds of the sales. (*Goodwin* v. *Wertheimer*, 99 N. Y. 149; *Barnard* v. *Campbell*, 58 id. 76; *Ratcliffe* v. *Sangston*, 18 Md. 383; *Bussing* v. *Rice*, 2 Cush. 48.) It is claimed that the general creditors of the firm will be prejudiced if the plaintiff is allowed to prevail, and that he will thereby acquire a preference over the other creditors of the insolvent firm. But general creditors have no equity or right to have appropriated to the payment of their debts the property of the plaintiff, or property to which it is equitably entitled as between it and Burkhalter & Co. They, so far as appears, advanced nothing and gave no credit on the faith of the firm's possession of the sugars, assuming that that element would have had any bearing on the case. If the sugars had existed in specie in the hands of the assignee it cannot be doubted that the plaintiff on rescinding the sale would have been entitled to retake them, and the general creditors are in no worse position, if the plaintiff is awarded the proceeds, than they would have been if the sugars had remained unsold.

Much was said on the argument upon the difference between a trespasser taking and disposing of the property of another and the case of a sale of personal property to a vendee induced by fraud. It is the law of this state, as in England, that title passes on such a sale to the fraudulent vendee, notwithstanding that the crime of false pretenses is included in the statute definition of a felony, but which was not such at common law. (*Barnard* v. *Campbell*, *supra;* *Wise* v. *Grant*, 140 N. Y. 593; Benj. on Sales [6th

ed.], § 433; *Fassett* v. *Smith*, 23 N. Y. 252; *Benedict* v. *Williams*, 48 Hun, 124.) But a purchase procured by fraud is in no sense, as between the vendor and vendee, rightful. It was wrongful, and while a transfer so induced vests a right of property in the vendee until the sale is rescinded, the means and act by which it was procured was a violation of both a legal and moral duty. But the rule is that a sale of personal property induced by fraud is not void, but is only voidable on the part of the party defrauded. " This does not mean that the contract is void until ratified; it means that the contract is valid until rescinded." When a contract of sale infected by fraud of the vendee is consummated and the property delivered, the vendor on discovering the fraud may pursue one of several courses. He may affirm the contract, and an omission to disaffirm within a reasonable time after notice of the fraud will be deemed a ratification. He may elect to rescind it, and thereby his title to the property is reinstated as against the purchaser and all persons deriving title from him, not being *bona fide* purchasers for value, and a purchaser is not such who takes the property for an antecedent debt or who purchased the property on credit and has not paid the purchase money or been placed in a position where payment to a transferee of the claim cannot be resisted. (*Barnard* v. *Campbell*, *supra*; *Dows* v. *Kidder*, 84 N. Y. 121; *Matson* v. *Melchor*, 42 Mich. 477; 1 Benj. on Sales, p. 570, note.) Upon rescission the vendor may follow and re-take the property wherever he can find it, except in the case mentioned, or he may sue for conversion.

When these legal remedies are available and adequate, clearly there is no ground for going to a court of equity. The legal remedies in such case are and ought to be held exclusive. But in a case like the present, where there is no adequate legal remedy, either on the contract of sale or for the recovery of the property in specie, or by an action of tort, is the power of a court of equity so fettered that where it is shown that the property has been converted by the vendee and the proceeds, in the form of notes

or credits, are identified beyond question in his hands, or in possession of his voluntary assignee, it cannot impound such proceeds for the benefit of the defrauded vendor? The only reason urged in denial of this power, which to our minds has any force, is based on the assumption that it would be contrary to public policy to admit such an equitable principle into commercial transactions. But with the two limitations adverted to, and which ought strictly to be observed, (1) that it must appear that the plaintiff has no adequate remedy at law, either in consequence of insolvency, the dispersion of the property or other cause, and (2) that nothing will be adjudged as proceeds except what can be specifically identified as such, business interests will have adequate protection. Indeed, the disturbance would be much less than is now permitted in following the property from hand to hand until a *bona fide* purchaser is found.

The case of *Small* v. *Attwood* (Younge, 507) is a very instructive case, which involved a large amount, was argued by eminent counsel and received great consideration. It supports, we think, the equitable jurisdiction invoked in the present case. It was an action by the purchaser to rescind a contract for the sale of mines and mining property induced by fraudulent representations, and to recover the purchase money paid to the amount of about £200,000. The court found the fraud and rescinded the contract, and made a decree for an accounting. On a supplemental bill being filed, showing that the purchase money paid had been invested by the seller in public securities in his name, which he afterwards caused to be put in the name of his mother, and that the purchaser had no other means adequate to re-pay the purchase money, the chancellor, on an application for an injunction restraining the transfer of the securities, held that the money paid could be followed into the stock purchased, and granted the injunction. The case *In re Cavin* v. *Gleason* (105 N. Y. 256) was an attempt to fasten upon the estate of an insolvent a preferential lien for money put into his hands by the plaintiff for the purchase of a mortgage for her; and which he applied, without

authority, to the payment of his debts before the assignment, with the exception of a small sum ($30.00), which went into the hands of the assignee. The court held that the money, which the insolvent had used to pay debts prior to the assignment, was not a preferred debt, but sustained her right to be paid the small sum which the assignee received belonging to the trust. This case points the distinction. The character of the debt gave it no priority. The fund had been dissipated and could not be traced among the assigned assets. There was no equitable ground of preference except for the small sum mentioned.

Upon the whole case, we are of the opinion that the judgment on the report of the referee was correct, and the order granting a new trial should, therefore, be reversed and the judgment on the report of the referee affirmed, with costs.

All concur.

Judgment accordingly.