(15 Misc. Rep. 327; 2 N. Y. Ann. Cas. 333.)

### HALLAHAN v. WEBBER et al.

(Supreme Court, Special Term, New York County. December, 1895.)

1. SALE—RESCISSION BY SELLER—WAIVER.
    The right of a seller to rescind on the ground that she was induced to make the sale by false representations of the buyer that he was solvent is not waived by delay in exercising it, where it appears that, 17 days after the buyer had made an assignment for benefit of creditors, a meeting of the creditors was held, which the seller attended, but at which nothing was accomplished; that afterwards the seller inquired at the office of the assignee's counsel how the affairs of the estate stood, and what dividend might be expected, and about a month later, after the assignee had sold the goods, served notice of an election to rescind the sale and to recover the purchase money from the assignee.

2. SAME—SALE BY GENERAL ASSIGNEE OF BUYER.
    The right of a seller to rescind after an assignment by the buyer is not affected by the fact that the assignee has sold the goods, where the seller does not seek to recover the goods, but only the proceeds.

Action by Catharine A. Hallahan, as administratrix, against George G. Webber and another, as assignee, to recover the proceeds of property purchased from plaintiff by defendant Webber, on the ground that the purchase was induced by false representations of Webber as to his solvency.

Theodore H. Friend, for plaintiff.

Benjamin H. Bayliss, for defendants.

BEEKMAN, J. I think it quite clear that the representations which were made by the defendant Webber to the plaintiff in order to induce the sale of the property in question were false, and that the plaintiff would not have parted with her goods, if she had not relied upon them, and believed them to be true. It is perfectly plain that, at the time of the purchase by him from the plaintiff, Webber's indebtedness largely exceeded his assets, and that he was in failing circumstances. His statements to the plaintiff, however, were of such a character as to justify a belief on her part that he was entirely solvent, was doing a prosperous business, and would be able to meet the notes, which he induced her to take for the property, upon their maturity. The evidence was at least abundantly sufficient to justify a rescission of the contract. Hammond v. Pennock, 61 N. Y. 145.

The only point in the case which really invites discussion is the question whether the plaintiff, with knowledge of the fraud which had been practiced upon her, acquiesced in the transaction, and thereby made her election not to rescind the same. The facts relied upon by the defendant in support of the affirmative of this proposition are that on April 9, 1894, some 17 days after he had made a general assignment for the benefit of his creditors, he called a creditors' meeting, at which the plaintiff was present. A proposition was submitted on the part of the defendant Webber for a settlement of his indebtedness on the basis of 50 cents on the dollar, for which his notes were to be given. The plaintiff objected to this, and the offer received no further consideration. Nothing further appears to have been said by her at this meeting, but after it was over, according to the testimony of one of the creditors, the plaintiff stated to him "that she could break up this whole assignment, in her opinion, if she desired to do so. She said she did not know whether she should or not." It also appears that at some time between the last-mentioned date and the 10th day of July, following, the plaintiff called at the office of the counsel of the assignee for the purpose of inquiring how the affairs of the assigned estate stood, and what dividend or settlement might be expected, and was informed by the counsel that he did not know. Nothing further seems to have taken place at the interview, beyond complaints on the part of the plaintiff that the defendant Webber had treated her badly in the matter. It also appears that, at the meeting of the creditors above referred to, it was stated by the assignee that unless some arrangement were made the assigned property would be sold at public auction very shortly. On the 28th day of April, 1894, such a sale was had of the assigned property, including that which had been sold by the plaintiff to said defendant Webber. The usual notices required by law were given, but the plaintiff claims that she was absent from the city at the time, and had no actual knowledge of the fact. On the 10th day of July the counsel for the plaintiff notified the defendants that the plaintiff elected to rescind the sale, and at the same time he tendered the notes which had been given to her for the purchase money, and demanded the return of the property, which was refused, and thereupon this action was brought. It is contended on the part of the defendants that all of these acts on the part of the plaintiff, and the lapse of time between the discovery by her of the alleged fraud and the date when she attempted to rescind the sale, evidenced an acquiescence on her part in the sale, which was, in itself, an election not to rescind.

The law is well settled that, where a contract is tainted with fraud in its inception, the defrauded party, upon the discovery of the deceit, has an election either to stand on the contract, or to rescind it, and that such election must be exercised within a reasonable time thereafter. It is true that in many cases it is stated that the election must be made promptly, or as soon as practicable, after the discovery of the fraud. The reason for such a rule is that others shall not be prejudiced or misled by the appear-

ance of ownership with which the vendor has invested the other party, when a prompt disaffirmance of the sale, upon discovery of the fraud affecting it, would have prevented any such injury. Whether or not a rescission for fraud has been prompt and timely must therefore be determined in the light of the reason which gives life to the rule, and in each case will depend upon the peculiar facts and circumstances of such case; and where it is apparent that the delay has not been unreasonable, and that the rights of others have not been affected or jeopardized by it, it cannot be said that the right to rescind is gone because the person having it did not exercise it immediately upon his discovery of the facts upon which the right rested. A waiver of the right to rescind, or an election not to rescind, is either a matter of express declaration, or, as is more frequently the case, arises as a matter of necessary inference from the acts or conduct of the person against whom it is asserted. Where, after the discovery of the fraud, the person claiming the right to rescind continues to deal with the property as if he were the owner, and does acts which are consistent only with an affirmation of the transaction attacked, he must be held to have elected not to rescind. The whole doctrine on this subject is most satisfactorily and clearly expressed in the case of Clough v. Railway Co., L. R. 7 Exch. 26, where the court, in referring to cases of rescission of contracts for fraud, says:

"In such cases the question is, has the person on whom the fraud was practiced, having notice of the fraud, elected not to avoid the contract? or has he elected to avoid it? or has he made no election? We think that, so long as he has made no election, he retains the right to determine it either way, subject to this: that if in the interval, whilst he is deliberating, an innocent third party has acquired an interest in the property, or if, in consequence of his delay, the position, even of the wrongdoer, is affected, it will preclude him from exercising his right to rescind. And lapse of time without rescinding will furnish evidence that he has determined to affirm the contract, and, when the lapse of time is great, it probably would, in practice, be treated as conclusive evidence to show that he has so determined."

This is not inconsistent with any of the decisions of the courts of this state, and is so accordant with reason and justice as to commend itself for adoption.

I do not think that the matters relied upon by the defendants in support of their contention justify the conclusion that the plaintiff had lost her right to rescind the sale at the time when she manifested her election so to do. Her presence at the creditors' meeting, where her attitude was that of dissent, certainly did not involve any dealing on her part with the defendant Webber, or with the assignee, from which it might clearly be inferred that she elected not to rescind the sale. Nor does it appear that the outcome of the meeting, in its relation to the defendant Webber, or to the assignee and creditors, would have been any different if the plaintiff had then and there declared her intention to rescind. Indeed, at no time during the three months which intervened between the date of the assignment and the time when the plaintiff manifested her election, were any acts done by either of the defendants which would not have been done if the plaintiff had ex-

pressed her purpose at an earlier date, save, possibly, the sale of the property by the assignee. The conversation between the plaintiff and one of the creditors, which took place after the meeting had adjourned, was evidence of nothing except that the plaintiff was then aware of the fraud which had been practiced upon her, but had not as yet determined whether she would attack the transaction on that ground or not. The inquiry made by her, at a subsequent period, of the counsel for the assignee, was for information in regard to the assigned estate, and the prospects of a dividend, which, of itself, was not evidence of acquiescence in the sale, but was probably sought by the plaintiff in order to enable her to come to a final determination as to the course which she should pursue. This, under the circumstances, was not at all unreasonable, and the plaintiff should not be prejudiced by reason of an inquiry which had a legitimate bearing upon the question whether it was to her interest to rescind the sale or not, and which did not mislead any one.

We have, therefore, left to consider, only the effect of the sale of the property at public auction by the assignee. In the first place, it is to be remembered that the latter was not a bona fide purchaser for value, and could not have held the original property against the plaintiff. The mere fact, therefore, of the sale by him under the circumstances, has not placed him at a disadvantage, in view of the fact that the plaintiff does not and could not claim, as against him, more than the proceeds of such sale. She is not asserting title as against any of the purchasers from him, nor is she seeking to fasten any liability upon him which is greater or more prejudicial than if he still retained the property in his hands. While it was in his hands it was still held by him for her benefit, upon her election to rescind the transaction with the defendant Webber; and her election after the sale gave effect to the rescission, so far as the assignee is concerned, only in respect to the proceeds in his hands. There has been simply a change in the form of the property. The proceeds of the sale took its place, and, in the hands of the assignee, were impressed with the same conditions, and equity requires that they should be applied and dealt with accordingly. Refining Co. v. Fancher, 145 N. Y. 552, 40 N. E. 206. I do not think, therefore, that either the action or inaction of the plaintiff during the period which intervened between the making of the assignment and the election by her to rescind the sale affords grounds from which it can be properly inferred that she elected to affirm the sale, or which made the assertion of her right to rescind, at the time when it was exercised, either inequitable or unjust. The contention that she did not make a sufficient tender of all that she had received from the defendant Webber upon the original sale is not established by the evidence. The entire purchase money was included in the 19 notes made and delivered by him to her. The cash which he paid at the same time was given on account of previous sales made by him of other property of the plaintiff, which he had sold for her as her agent. Even

the tender of the notes, although made, was unnecessary.   Nichols v. Michael, 23 N. Y. 264–272;  Gould v. Bank, 86 N. Y. 75–82.

For the reasons which have been stated, the plaintiff is therefore entitled to recover from the assignee the proceeds realized by him upon the sale of so much of the property of the plaintiff as came into his hands, from which, however, should be deducted a pro rata proportion of the expenses of the sale.   In respect to so much of the property as cannot be identified in its converted form, the value of the same must be ascertained as of the date of the assignment, and judgment therefor awarded against the defendant Webber.   Costs are allowed to the plaintiff, and, as a reference will be necessary before final judgment can be awarded, notice of settlement of the interlocutory judgment must be given.   Ordered accordingly.