(Superior Court of Cincinnati—Special Term.)

ATLAS NATIONAL BANK v. RHEINSTROM, BETTMAN, JOHNSON & CO., LEON BLOCK and THE LOUISVILLE TRUST CO.

1. Res judicata operates as no bar to an action unless the issues and parties are the same in the former action.
2. A vendor may rescind a fraudulent sale without tendering the purchase-money; it is sufficient if he offers to pay the purchase-money or notes into court to await the determination of the action brought to recover possession of the personal property or its proceeds; and a tender of such notes at the trial is sufficient.
3. Wherever one has a lien or security on two funds belonging to same person, and another has a subsequent lien only on one of them, the holder of the security on the two funds may be compelled to act in such a manner as not to prejudice the equity of the subsequent lien holder, so far as it would not impair his rights.
4. A vendor may follow the proceeds of goods fraudulently purchased from him and modern equity, having exploded the doctrine "money has no ear marks," it is no defense that the proceeds have been mingled with other funds; the vendor may recover if he can trace them in the common fund.
5. B sold to L. & Son 25 Bbls. of Peacock whiskey, and delivered to them warehouse receipts, and received L. & Son's notes. L. & Son pledged these receipts with other collaterals to the A. Bank, and then made a general assignment for the benefit of their creditors. The purchase of L & Son being fraudulent, B rescinded the sale, and offered to take up the whole loan from the A. Bank, which refused such offer. The A. Bank sold at auction all the collaterals. C purchased B's warehouse receipts, and at the time of payment by C, B notified the bank that he was the owner of the receipts, subject to the Bank's rights, whatever they might be, and that he held the Bank as trustee of the proceeds of them accordingly. The entries of the books of the Bank distinctly itemized the separate and several proceeds of each lot of collaterals sold, among which were those of B. The Bank having a surplus from the sale of all the collaterals of $918.00, brought an interpleader impleading B, L. & Son's assignee, and R, who was an attaching creditor on the fund. At the hearing B tendered the notes given by L. & Sons. Held, B was entitled to the surplus as the proceeds of the goods fraudulently purchased by L. & Sons.

---

Smith, J.

The Atlas National Bank has filed a petition alleging that it has in its possession the sum of $918.00, and that the same is claimed by each of the defendants, and that it is unable to determine to which the same belongs. It therefore asks that the Court decree a distribution of the fund according to the equities of the case.

Briefly stated the facts are as follows:

On or about October 24, 1894, Leon Block, of this city, who is engaged in the Wholesale Whiskey business, sold to S. Lehman & Son of Louisville, a large quantity of whiskey of the value of $1500, taking in payment the promissory notes of said S. Lehman & Son, and delivering to the latter firm in place of the whiskey itself the warehouse receipts of the same. The warehouse was located in Kentucky.

In December, 1894, S. Lehman & Son made an assignment for the benefit of creditors to the Louisville Trust Co. In January, 1895, Block,

learning that the purchase from him by S. Lehman & Son was fraudulent in that said firm at the time of the purchase was hopelessly insolvent and known to be so by the members of the firm, determined to repudiate the sale on the ground of fraud, and accordingly replevined the whiskey itself from the Kentucky warehouse. After the action in replevin he learned that the warehouse receipts for the whiskey were held by the Atlas National Bank of Cincinnati as collateral security for two loans, amounting to $21,500 made by said bank to Lehman & Sons. The bank being an innocent holder for value of the collaterals, Block abandoned his action in replevin and the possession of the whiskey. Thereupon he began an action in injunction in the common pleas court of Hamilton county against the Atlas National Bank, alleging the facts above stated, and praying that the bank be enjoined from selling, assigning, transferring or otherwise disposing of said warehouse receipts until it first should have exhausted the other collaterals held by it.

A temporary restraining order was issued, but upon final hearing was dissolved and a judgment rendered in favor of the defendant. Thereupon the case was appealed by plaintiff to the circuit court where it is still pending.

Before the hearing in the court of common pleas, Block went to the bank and offered to take up, or rather to purchase from them the paper of Lehman & Son with the accompanying collaterals, but the bank refused to part with the same.

After the decision in the common pleas court dismissing the petition of Block, the bank proceeded to sell the whiskey held by it as collateral. It was sold in separate lots to different purchasers. And the Block whiskey was sold on April 6th, to W. H. Chappel, for $1,436. Two hundred and fifty dollars was paid in cash, and the balance, $1,186, by check. The entry upon the bank's books is:

April 6. Sold 25 Bbls. Pecock whiskey, $1,186.16  
                     Deposit on same, $ 250.00        $1,436.16

At the time of the delivery to the bank of the check of W. H. Chappel, and just before the delivery of the warehouse receipts by the bank to said W. H. Chappel, Block served the bank with the following notice:

"To the Atlas National Bank:

"I hereby notify you that warehouse receipts for the 25 barrels, June 1891, tax, paid Peacock Whiskey described in my petition against you, filed in case No. 102,544 court of common pleas, and which you claim were pledged to you by S. Lehman & Son, and sold by you to W. H. Chappel, belong to me, subject to whatever rights the court may find you entitled to; that you are held by me for the proceeds thereof as holding the same in trust or in any other character for my benefit that the court may adjudge, and that you deliver the said proceeds to me at all events; that you do not pay the same or any part thereof to any other person; that if you are entitled to any rights superior to mine that you pay to me at all events (without any waiver on my part of my claim to the whole) among other sums the surplus after deducting from your claim against S. Lehman & Son the amount for which were sold all the collaterals pledged by them to you to secure the same.

                                      "Yours,
"(Signed,)                          LEON BLOCK."

The bank refused to first appropriate the proceeds from the sale of the other collaterals to its debt; but against the amount due on its books from the Lehmans it credited them with the amount of the proceeds of

the sales of each lot of whiskey, and then struck a general balance on its books showing a surplus realized from the collaterals over the debt of Lehman & Son of $918.00, the amount now held by the bank and which it brings into court for distribution.

The main question for determination presented by this case is: Does this $918.00 belong to Leon Block, as representing the balance of the proceeds realized from the sale of his whiskey after the payment of the claim of the bank—or has the proceeds from the sale of his whiskey been so mingled by the bank with the proceeds from the sale of the other whiskies pledged as collateral, that it is impossible to declare that this $918.00 is the proceeds from the sale of any particular lot of whiskey, and that therefore it is the property of S. Lehman & Son, and of his assignee in insolvency—The Louisville Trust Company. In other words, can Block so identify this $918 as part of the proceeds of the sale of his whiskey as to be entitled to claim it as his property.

Block's right to rescind the sale and to reclaim the whiskey in specie depends upon the question of fact whether the sale was fraudulent within the meaning of that term as defined in the case of Talcott v. Henderson, 31 Ohio St., where it is held that if one purchase goods when he is insolvent, with no resonable expectation of paying for the same, such a purchase, in contemplation of law, is fraudulent, and, upon discovery of the fraud, the vendor may rescind the sale and retake the goods. I find no difficulty in the determination of this question of fact. The sale was not only constructively but actually fraudulent upon the part of the purchasers, S. Lehman & Son; and this fact is so plainly proved that I do not consider it necessary to review the evidence for the purpose of sustaining my finding.

If the right of the Bank, therefore, as an innocent purchaser, for value of the whiskey, had not intervened before Block's assertion of his right to rescind, he would clearly have been entitled to retake the whiskey in specie? Why is he not entitled to take or have turned over to him that part of the whiskey or its proceeds of sale which remains after the claims of the bank are satisfied.

The defendants answer for three reasons:

First—That the judgment in the common pleas court in the case of Block v. Atlas National Bank heretofore referred to is a bar to any proceeding in this case by Block to appropriate the surplus proceeds of $918.00.

Second—That Block cannot be held in law to have rescinded the sale for the reason that he has retained possession of the notes of Lehman & Son, given for the purchase of the whiskey, until the day of trial, and no tender of them was made by Block until he tendered them in court before the trial to await the determination of this case.

Third—That the proceeds of sale have been so mingled together by the bank that it is impossible to trace Block's whiskey into the proceeds, so that he can identify the balance of $918.00 as part of the proceeds of the sale of his whiskey.

As to the first objection, viz: that the proceeding in the common pleas court is a bar, it must be remembered in considering this objection, that the proceeding there was between Block and The Atlas National Bank. Lehman & Son were not parties to that action which sought to restrain the bank from the sale of the whiskey. This controversy is between Block and Lehman & Son, or their assignee, as to the right to the surplus remaining after the sale of the whiskey. Neither the parties nor the issue here is the same as in the common pleas case, and the proceeding in that court therefore, cannot be regarded as res adjudicata of the question at bar.

As to the pendency of the case in the circuit court—the same reasons for holding that the proceedings in the common pleas court are not a bar to the proceedings here, apply with even greater force to the case in the circuit court, because the whiskey having been sold, the relief sought in that case is impossible.

The second objection, as has been before stated, is, that the sale was never rescinded by Block because he did not tender back the notes until he tendered them into court on the trial.

But in actions to set aside sales upon the ground of fraud it is not a pre-requisite to the right to rescind that the plaintiff shall have tendered back the purchase-money, for the reasons that the terms on which a transaction will be rescinded vary with the particular circumstances of the case, and therefore it is sufficient if the plaintiff offers to pay the money or notes into court and await the decree of the chancellor. Saxton v. Seiberling, 48 Ohio St. 560. And in actions to recover possession of goods from a fraudulent vendee who has given his notes therefor, it is sufficient to produce the notes upon the trial and surrender them to the custody of the court, and in that case the rights of both parties are protected, whatever may be the result of the litigation. Nichols v. Michaels, 23 N. Y. 269, 272, 273; Thurston v. Blanchard, 22 Pickering, 18, 21. The tender made in this case, was sufficient, and the right to rescind cannot be defeated by the defense of a want of tender.

I now come to the third and main defense, viz: That by reason of the manner of sale and the mingling of the proceeds thereof, it is impossible to identify any particular money now in the bank's hands as the proceeds of the sale of the Block whiskey, and therefore Block fails to trace his whiskey into its converted form of money, and therefore becomes simply a general creditor of the firm of S. Lehman & Son, and required to prove his claim with the Louisville Trust Co., to whom, as assignee of S. Lehman & Son, the fund now in the hands of the bank has passed.

In discussing the soundness of this contention I find it necessary to say, and I say it with all due respect to the judge of the common pleas court who decided the case—that I cannot bring myself to think that the decision in that case was correct. It appeared in that case, beyond dispute, so far as we know, that the Atlas National Bank holding $21,500 of the paper of S. Lehman & Son, also held as collateral security certain lots of whiskey pledged by S. Lehman & Son, among which was the lot sold by Block. No other vendor sought to rescind the sale of the other whiskey, and, so far as appeared, the title to all but the Block whiskey was perfect in Lehman & Son. Under these circumstances I am entirely satisfied that an order should have been made, directing that the proceeds of sale be kept separate and that the proceeds of sale from the Block lot should not be touched until the other had been exhausted. The principle upon which this should have been done is elementary in equity and is expressed by Pomeroy on Equity in Sec. 396, as follows:

"If a person who has two real estate mortgages, both to one person, and afterwards only one estate to a second mortgagee, the court, in order to relieve the second mortgagee, has directed the first to take his satisfaction out of that estate only which is not in mortgage of the second mortgagee, if that is sufficient to satisfy the first mortgage, in order to make room for the second mortgage." The same rule applies wherever one has any lien or security on two funds, and another has a subsequent lien on only one of them. This doctrine is plainly referable to the principle that the holder of the security on two funds is compelled to shape his own remedy, so as to preserve, if possible, the equity of the one whose lien extends to but one fund."

In view of the right which Block possessed to require the Atlas National Bank, under the circumstances, to first apply the proceeds of the sale of the whisky other than the Block whiskey to the payment of its indebtedness and then to apply only so much of the proceeds from the sale of the Block whiskey as was necessary to pay the indebtedness remaining, ought it not to be said that equity will regard that as done which ought to be done and to declare that the balance now in the hands of the Atlas National Bank belongs to Block? And may we not invoke, in support of this conclusion, the equitable principle declared by Sir George Jessel, in Knatchbull v. Hallett, 13 Ch. D. 727, when he says:

"Nothing can be better settled either in our own law, or I suppose the law of all civilized countries than this that where a man does an act which may be rightfully performed, he cannot say that this act was intentionally and in fact done wrongly. A man who has a right of entry cannot say he committed a trespass in entering. A man who sells the goods of another, as agent for the owner, cannot prevent the owner adopting the sale and deny that he acted as agent for the owner. It runs throughout our law, and we are familiar with numerous instances in the law of real property. A man who grants a lease believing he has sufficient estate to grant it, although it turns out he has not, but has a power which enables him to grant it, is not allowed to say he did not grant it under the power. Whenever it can be done rightfully, he is not allowed to say, against the person entitled to the property or the right, that he has done it wrongfully. That is the universal law."

It is contended, however, that this principle of equity is impossible of application because the proceeds of sale of the collateral have been mingled together so that it is impossible to identify the proceeds from each lot of whiskey. It is not necessary that I should express an opinion as to whether identification of the proceeds is a necessary prerequisite to the application of this principle, because, in my opinion, it is possible, under the modern principles of equity to trace the proceeds of the sale of the Block whiskey, notwithstanding the mingling of the proceeds in the hands of the Bank.

It is conceded that it is not necessary, in recovering property, that it shall be in the same form as when wrongfully taken, but it is contended that when it is changed into money the money must be so set aside as to enable the court to say that the money in controversy is the result of the sale of the property originally taken.

Whatever foundation in the early days of equity jurisprudence there may have been for the doctrine that "money has no earmarks," and therefore when mingled with other funds it could not be traced, it is now well settled that the doctrine is exploded. Knatchbull v. Hallett, 13 Ch. D. 696; Bank v. Ins. Co., 104 U. S. 54; Bank v. Armstrong, 36 Fed. Rep. 59; Standard Oil Co. v. Hawkins, 74 Fed. Rep. 395; American Sugar Refining Co. v. Fancher, 145 N. Y. 552; Converse v. Sickles, 16 N. Y. 200.

A brief examination of the facts of a few of the leading cases on this subject will illustrate the principle of modern equity upon this question, and the reason for the same, and enable us to determine whether it is applicable to the facts in the present case.

In Knatchbull v. Hallett, money held by a person in a fiduciary capacity was paid by him into his account at his bankers, and afterwards checked out of the general fund for his private use. It was held in such a case that the presumption of law should be that the drawer intended to draw out his own money and therefore that the balance left which was not equal to the trust funds deposited should be held in equity to be the property of the cestuis que trust.

In Bank v. Insurance Co., 104 U. S. 54, where the trust funds were mingled by a depositor with his own, and the Bank undertook to assert a lien upon all the funds, although having at least constructive notice that the fund included trust funds, the court applying the modern doctrine of equity in tracing funds and asserting the other principles of equity that should apply in such a case, held that:

"A banker's lien on the securities and the money deposited in the usual course of business, for advances which are supposed to be made upon their credit ordinarily attaches not only against the customer, but against the unknown equities of all others in interest, but it can not prevail against the equity of the beneficial owner, of which the banker has either actual or constructive notice.

In American Sugar Refining Co. v. Fancher, 145 N. Y. 552, the modern doctrine of equity that in cases of fraud and the change of the form of property, equity, as far as possible, will break through all forms in tracing the proceeds and do what justice demands should be done, is well expressed in the following citation:

"The cases upon this head are very numerous where there has been a misapplication of trust funds by trustees or persons standing in a fiduciary relation and the money or property misapplied has been laid out in land or converted into other species of property. The court in such cases lays hold of the substituted property and follows the original fund through all the changes it has undergone until the power of identification is lost or the rights of bona fide purchasers stop the pursuit, and holds it in its grasp to indemnify the innocent victim of the fraud. And even in case of money, which is said to have no earmark, its identity will not be deemed lost, though it is mingled with other money of the wrong doer if it can be shown that it forms a part of the general mass. In the cases of stolen property or of misapplication by a trustee or agent of the funds of the principal or cestuis que trust, the title of the real owner of the property has been in most cases lost without his consent, and the court, by a species of equitable substitution, repairs, as far as practicable, the wrong, and prevents the wrong doer from profiting by his fraud."

Let us apply these principles declared in these cases together with the other equitable principles before referred to.

The Block whiskey, by reason of the fraud of Lehman & Son, in the purchase of the same, did not belong to Lehman & Son. The right of the Bank, as an innocent purchaser, for value, was to use only so much of it as was necessary to the payment of its debt and no more. It had notice of Block's claim before the whiskey was sold, and again as the check for the sale of the Block whiskey passed into its hands. It knew that Block was asserting his claim to that part of the proceeds not necessary for the payment of its claim—asserting it in every possible way, in court and out of court. Under these circumstances the Bank sells the Block whiskey, makes a separate entry on its books of the amount on the day of sale, and after the sale of all the collaterals it credits the amount of the same generally against the debt, and a balance is shown in its hands of $918.00.

Why, in justice and equity, should this balance be turned over to Lehman & Son, or to their assignee, instead of Block? We have seen that the mingling of the funds in bank is no bar to its recovery by Block. The only other obstacle then, that stands in the way, is the book-keeping of the Bank, which fails to show that the proceeds from the sale of the Block whiskey were not applied to the payment of the Bank's debt until the proceeds from the sale of the other collaterals were exhausted. But even the book-keeping is not an obstacle. The entry of the receipt of the

proceeds of the Block whiskey is separate, and equity will presume, it seems to me, that the Bank intended to do that which in equity it should have done, viz., postpone payment out of the proceeds from the Block whiskey until the proceeds of the other collaterals had first been exhausted. The maxim that "Equity regards that as done which ought to be done," and the doctrine that "where one has done a thing which may either have been done rightfully or wrongfully, equity will presume that he did it rightfully," are sufficient in equity to prevent Lehman & Son, or a v of its creditors, from asserting that the Bank has so mingled the funds hat the proceeds of the sale of the Block whiskey cannot be traced. The o ler of the court, therefore, will be in favor of Leon Block for the full amount in the hands of the Bank. The question of costs is reserved for future consideration.

Jacob Shroder, for Leon Block.

George Hoadly, Jr., for Louisville Trust Co.

Simeon Johnson, for Rheinstrom, Johnson & Co.

Stephens, Lincoln & Smith, for the Bank.