(31 Misc. Rep. 518.)

## PHELAN v. DOWNS et al.

(Supreme Court, Special Term, Albany County. March 27, 1900.)

UNAUTHORIZED ACTS OF AGENT—DIVERSION OF FUNDS—RECOVERY BY PRINCIPAL.

An agent, without authority so to do, took funds of his principal, and paid a part of the price of real estate bid in by the agent in his own name at foreclosure sale. The agent failing to pay the balance, the referee resold the premises, receiving a price therefor in excess of the mortgage debt, but not so large as the sum bid by the agent, and from the proceeds paid the mortgage debt and the costs of the resale. *Held*, that the principal, and not the owner of the equity of redemption, is entitled to the sum paid by the agent, since such sum is not the proceeds of a foreclosure sale, and the owner of the equity of redemption parted with nothing of value.

Action by John J. Phelan, as receiver, against J. Murray Downs and others, to recover a sum of money unlawfully paid to defendant Downs by an agent of plaintiff's insolvent. Judgment for plaintiff.

Nussbaum & Coughlin (Lewis E. Carr, of counsel), for plaintiff.

Bailey & Dugan (J. Newton Fiero, of counsel), for defendants Downs as referee and individually and First Nat. Bank of Albany.

BETTS, J. The defendant Downs was appointed referee to sell premises Nos. 480–482 Broadway, in the city of Albany, in an action to foreclose a mortgage. The defendant the First National Bank of Albany was the owner of the equity of redemption in these mortgaged premises at the time of sale. By the terms of sale announced by the said Downs as referee, the purchaser was required to pay 15 per cent. of the purchase money to the referee at the time and place of sale. The premises were bid off February 11, 1897, by the defendant Henry F. Gillig, for the sum of $40,000. The defendant Gillig was at that time secretary of the American Fur Company, of which the plaintiff, John J. Phelan, is now receiver. Gillig paid this $6,000 required by the terms of sale to the referee at that time with funds taken from the American Fur Company without authority. The purchaser, by said terms of sale, was required to complete his purchase by paying the remaining $34,000 to the referee on the 15th day of February, 1897. Gillig did not pay the balance of the purchase price at that time, nor at any other time, although notified so to do by the referee. The premises were subsequently put up by the referee under a new notice of sale, and were sold for a less amount, i. e. $29,850, a deed delivered to the purchaser at that sale, and the proceeds thereof first applied to the payment of the mortgage debt, costs, and expenses of the sale, and a considerable surplus remaining was paid into court, and still remains undistributed. The $6,000 still remains in the hands of the referee, he having been directed by an order of the court in the foreclosure action to retain that sum until a further order of the court. John J. Phelan, subsequently to these transactions, was appointed receiver of the American Fur Company, and directed to bring this action. This action is brought for a judgment directing the defendant, as referee, to pay to the plaintiff, as owner thereof, the said sum of $6,000, and asking judgment of this court to restrain the defendant from paying this sum of $6,000 to any defendant or any other person. The defendant Downs, as referee or individually, asserts no claim to this $6,000. The defendant the First National Bank of Albany claims it is entitled to this fund by reason of being the holder of the equity of redemption at the time of sale. The $6,000 was deposited by the referee in the First National Bank of Albany, and still remains there to his credit. The question presented here is solely between the plaintiff and the defendant the First National Bank of Albany. The $6,000 was the money of the American Fur Company. It was taken from its deposit in bank. There is no dispute of that. Its business was mercantile, and did not embrace the buying of real estate. Gillig was not directed by it to buy the premises in question. So far as appears, it was entirely a venture of his own. He had no authority whatever to take the funds of the company to make this purchase, or to pay for the premises having made the purchase. The plaintiff in the foreclosure action was paid, and a surplus remains. The $6,000 is

no part of the surplus money remaining on the foreclosure of a mortgage. That is properly money remaining as the proceeds of a sale of the mortgaged premises, and after payment of plaintiff and costs of foreclosure and sale. There is only one completed sale in a mortgage foreclosure. The statute provides for a sale, not sales. The judgment directed a sale. Sections 1626, 1633, Code Civ. Proc.; Sup. Ct. Rules 61–64. The referee recognized this by paying into court and reporting the actual surplus, and by making a separate report as to this $6,000. The court at special term also recognized this by approving of the referee's action in regard to the actual surplus, and directing him to hold this $6,000 fund until its further order. This $6,000 was a fund gathered by the way towards a sale, and is no part of the proceeds of sale. This fund might have been charged by the court at special term with the extra expense made necessary by the bid of Gillig, but it did not do so, nor was any application apparently made for that purpose, and those expenses have now been paid, and the amount thereof was not shown on this trial. This $6,000 not being a surplus on mortgage foreclosure, it follows that the defendant the First National Bank of Albany, as the owner of the equity of redemption in the mortgaged premises, has no statutory lien on it or claim to it.

Now, as to the equities between the plaintiff and the defendant the First National Bank of Albany. This $6,000 belongs to the American Fur Company or its receiver, and should properly go towards discharging its debts, or be divided among its stockholders, unless a superior equity to it has been shown by the said First National Bank of Albany. While the action of Gillig in obtruding himself into the judicial sale apparently has injured the defendant, yet it was through no fault shown of the American Fur Company, to whom the money belonged. This is not a contest between Gillig and the First National Bank of Albany. It does not even appear in this case to what extent Gillig's act did reduce, if any, the actual surplus, as the referee, under the direction of the court, abandoned Gillig's bid, and readvertised the premises. So that the measure of loss in the price obtained for these premises would be the difference between the amount bid by the next highest bidder to Gillig and the $29,850 for which premises were sold, the amount of which difference does not appear. The American Fur Company was under no obligation to bid on this sale, or to create a fund to satisfy the claim of the First National Bank of Albany against these mortgaged premises. If the bank thought that $29,850 was not the full value of the mortgaged premises, it should have made the purchaser pay more or taken the premises itself. This it did not do, and, having failed to protect its rights at this judicial sale, it cannot now come into court, and make good its loss from the fund wrongfully taken from the American Fur Company. The American Fur Company received no value whatever for this $6,000 wrongfully taken from it. It has stopped its transfer by the party to whom it was paid, without authority, by its secretary. Money thus diverted can be followed at the suit of its rightful owner, and restoration made, where the parties in whose possession it is found have parted with no

value for it. Refining Co. v. Fancher, 145 N. Y. 552, 40 N. E. 206, 27 L. R. A. 757; Roca v. Byrne, 145 N. Y. 182, 39 N. E. 812, and cases cited. The defendant the First National Bank of Albany parted with no value for this $6,000, nor did the referee. The $6,000 should be returned to the plaintiff, and a judgment may be entered accordingly.