## WEIDEMAN v. NEWTON ARMS CO., Inc. (MANUFACTURERS' & TRADERS' NAT. BANK OF BUFFALO et al., Interveners).

(Circuit Court of Appeals, Second Circuit. January 12, 1921.)

### No. 103.

Receivers ⬤═152—Trust funds must be traced into hands of receiver to give right of priority.

Persons who sent orders with money to a corporation which went into the hands of a receiver, the orders not having been filled, in order to establish a trust relation which entitles their claims to priority of payment on the ground of false representations by the corporation, must (1) show that such representations were relied on and (2) trace their money into some particular property or fund which came into the hands of the receiver, and it is not sufficient to show that it was used by the corporation generally in its business.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Appeal from the District Court of the United States for the Western District of New York.

Suit in equity by Carl J. Weideman against the Newton Arms Company, Incorporated. Appeal by The Manufacturers' & Traders' National Bank of Buffalo and another intervened. From an order of the District Court, interveners appeal. Reversed.

See, also (D. C.) 260 Fed. 348.

Defendant corporation, being insolvent in the sense of inability to pay its current obligations as they matured, passed into the hands of a receiver appointed under a creditors' conservation bill. The receiver has liquidated the assets of the corporation; no other form of conservation having been found possible. The business of the company was the manufacture, sale, and repair of rifles. It circulated advertising matter setting forth how many rifles it could presently make and what its capacity would be in the near future, and of course solicited business. We assume that these representations of capacity were untrue. More orders for rifles, or for the repair of rifles, were received than could be filled, and many of such customers forwarded the money for what they wanted at the time of giving their orders.

Failure occurred with a large number of such orders unfilled. The money sent in by those giving the orders had been used in conducting the business of the concern. There was substantially no money on hand as cash at the time of receiver appointed. Uncontradicted testimony is that when such appointment occurred the "liabilities were about $400,000, the cash on hand was very slight, fluctuating from day to day from zero up to $300 or $400 a week." As a going concern the business might be valued at about $300,000. but if it were "wound up and scrapped it would be worth about $50,000 or $60,000." The receiver has wound up the business and "scrapped" it, and has produced thereby a sum far less than that required to pay all creditors in full.

By the order complained of the District Court granted a preference over all other creditors to those customers who had ordered goods from the company, forwarded their money with their orders, and never received what they ordered. Thereupon the holders of receiver's certificates took this appeal.

J. Edmund Kelly and Locke, Babcock, Spratt & Hollister, all of Buffalo, N. Y., for appellants.

Charles Newton, of Buffalo, N. Y., for preferred claimants.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The basis of the lower court's holding is that the moneys sent to the insolvent company constituted "a trust estate in the custody of the receiver, who occupies the same position in respect to such moneys" as did the corporation itself. The foundation, however, on which such trust estate must stand, is the fraud of the corporation, which in this case could only have been the fraudulent representations of the advertising matter above referred to.

But in order to establish such a trust on the part of a wrongdoer it is necessary to show that the fraudulent representations were relied upon, so that it may fairly be said that the cestuis qui trustent, in this case the ready money customers, lost their money by relying upon the representations. There is absolutely no proof on this point in the record before us, and accordingly the basis of fact implied in the cases cited below (American Sugar Refining Co. v. Fancher, 145 N. Y. 552,

40 N. E. 206, 27 L. R. A. 757; Jaffe v. Weld, 208 N. Y. 593, 102 N. E. 1104), does not exist.

But even if the trust relation be established, if the trustee is in bankruptcy or insolvency, it is absolutely necessary to trace the money covered by the trust into some particular property or fund. It is just as necessary to trace as it is to prove the trust relation. There is no pretense of tracing this money into the receiver's hands in any other sense than that the money was spent in carrying on a business or procuring certain articles of machinery and the like, which ultimately passed into the receiver's hands. This is not enough; cash is never traced merely by showing that it went into a general estate. This subject we have recently treated in Re Bolognesi, 254 Fed. 770, 166 C. C. A. 216, Re Matthews, 238 Fed. 785, 151 C. C. A. 635, and Re Jarmulowsky, 261 Fed. 779.

Inasmuch, therefore, as the creditors preferred below have (1) failed to prove in point of fact a trust relation, and (2) have (assuming such relation) failed to trace their money, the order under review is reversed, because the appellees are not entitled to any preference over other and general creditors.