UNITED STATES v. BITTER ROOT DEVELOPMENT CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   November 7, 1904.)

No. 1,047.

1. EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.
    To give a court of equity jurisdiction of a suit involving matters cognizable at law, it must appear that the equitable remedy will afford more complete or effectual relief in kind or degree than the legal remedy, and the fact alone that the evidence may be obtained and presented with greater convenience in an equity suit is not sufficient.

2. SAME—ACTION FOR TORT—ACCOUNTING.
    A bill by the United States against a number of corporations and individuals to recover for a joint trespass upon public lands, and the unlawful and willful cutting and removal of timber therefrom by defendants, who are alleged to have conspired for the purpose, does not state a cause of action in equity for an accounting because it is alleged that, by reason of the complicated relations between the defendants, complainant is unable to state the quantity of timber taken by each.

3. SAME—SUIT TO RECOVER FOR TIMBER CUT FROM PUBLIC LANDS.
    The United States cannot maintain a suit in equity for an accounting of the gains and profits made by defendants from the alleged unlawful and willful cutting and removal of timber from public lands; its right of recovery being confined to damages for trespass, or damages, recoverable in an action in the nature of trover, in an amount to be based on the value of the manufactured product.

4. SAME.
    A suit by the United States to recover for trespass upon public lands, and the cutting and removal of timber therefrom, does not present a case of mutual accounts, cognizable in equity, because of an allegation that complainant granted licenses to defendants to cut timber from certain other lands, and that under cover of such licenses they unlawfully and willfully cut timber from the lands in suit; nor is such a suit maintainable on the theory of establishing a trust in property purchased with the proceeds of the timber taken, where it is not alleged that defendants are insolvent.

5. SAME—DISCOVERY—PRODUCTION OF DOCUMENTS IN SUPPORT OF LEGAL DEMAND.
    A federal court of equity is without jurisdiction of a suit for a discovery and for final relief which consists of the enforcement of a purely legal demand; the only ground of equity jurisdiction being the discovery by requiring the production of papers and records, which, under Rev. St. § 724 [U. S. Comp. St. 1901, p. 583], can be obtained in an action at law.

6. SAME—SUIT AGAINST EXECUTOR.
    A federal court of equity is without jurisdiction of a suit against an executrix to recover for a tort alleged to have been committed by her testator, where she is not charged as trustee, but solely as the personal representative of the tort feasor.

Appeal from the Circuit Court of the United States for the District of Montana.

The appellant was the complainant in a bill in equity filed in the Circuit Court of the United States for the District of Montana against the appellees

herein as defendants. The substance of the bill was as follows: That on April 1, 1888, the appellant owned certain public lands in the state of Montana, which are described in the bill, comprising many thousands of acres, some of which were surveyed, and others of which were unsurveyed; that on said date there were growing and standing on said lands forests of pine and fir and other trees fit to manufacture into lumber, which standing timber was of the value of more than $2,000,000; that at the date of filing the bill said lands had, for the most part, been stripped of such timber, and, except very small portions thereof, were denuded of timber, without license or authority or permission of the United States or any one authorized to represent the appellant, and that in consequence of such spoliation the appellant has lost millions of dollars' worth of its property; that one Marcus Daly, now deceased, a citizen and resident of the state of Montana, did on or about January 1, 1889, determine to convert and appropriate to his own use all the merchantable and marketable timber growing and standing on the said lands, without buying the same or obtaining any right or authority except as in the bill hereinafter stated; that, in order to carry out his designs, and to conceal his identity and escape personal liability, and to deceive the public and the officers of the appellant, he, with the aid of certain named persons, on or about August 12, 1890, organized, under the laws of the state of Montana, the Bitter Root Development Company, of which John R. Toole, William Toole, and James W. Hamilton were named as incorporators, and they and Daniel J. Hennessy and William W. Dixon were named as trustees to manage the affairs of the company for the first three months of its existence; that the capital stock of the corporation was fixed at the sum of $300,000; that said incorporators and trustees had but a nominal interest in the corporation, but certain of them were agents, and others attorneys, of said Marcus Daly, and with him they conspired to denude said lands of their timber; that all of the stock of said corporation was subscribed for the use of and controlled by the said Marcus Daly, and that said named persons, together with Moses Kirkpatrick, William Scallon, Malcolm B. Bromley, Michael Donahue, William L. Hoag, and Joseph B. Long, aided and assisted said Marcus Daly up to the time of his death in the work of spoliation which, in pursuance of said conspiracy, had been planned; that said parties other than Daly participated in the profits, but to what extent it is unknown to the appellant; that such of the said parties as are not made defendants to the bill are either dead, or out of the jurisdiction of the court, or insolvent; that immediately upon the organization of the corporation, and under the corporate name thereof, said parties so named commenced the work of cutting and carrying away from said lands the growing and standing timber thereon, using at first several portable sawmills, and later a large lumber sawmill at the town of Hamilton, and carried on said work with unremitting industry for several years; that at all such times the officers, directors, trustees, and stockholders of said corporation acted for and in behalf of said Marcus Daly, as his agents, and had knowledge that said timber was being cut without right or authority from the public domain, except as to a small fraction thereof, as hereinafter stated; that in pursuance of such fraudulent conspiracy, and concealment of the same, the said conspirators, under the name of the Bitter Root Development Company, did at certain times during the several years of said depredations obtain from the appellant licenses to cut certain timber on small portions of the tracts in the bill described, and under cover of such permits they cut and carried away and manufactured not only the timber growing on the lands included in such licenses, but they willfully and fraudulently entered upon large tracts of land adjacent thereto, and cut and carried away the timber growing thereon, and afterwards cut and sold the lumber to persons unknown to the appellant, but known only to said Daly and the officers and agents of said corporation; that they appropriated the proceeds of the same to their own use; that just when such sales were made, how much the proceeds were, to whom paid, in what proportion, and at what particular times, the appellant is unable to say; that in further execution of said conspiracy the said Daly and his associates organized other corporations for the purpose of concealing their illegal acts, and to make detection and proof of the same difficult, if not impossible; that on January 14, 1891, they

organized the corporation known as the Anaconda Mining Company, with a capital stock of $12,500,000, divided into 500,000 shares; that on December 5, 1891, the capital stock of said corporation was increased to $25,000,000; that at the stockholders' meeting at which this was done it appeared that no one of the incorporators or trustees that were named at the time of the incorporation had any substantial interest therein, and that on December 31st of that year another meeting of the stockholders was held, at which it was voted to extend the term of existence of said corporation for 40 years. At that meeting it appeared that Marcus Daly, either in his own person or as trustee or by proxy, controlled over 700,000 of the 1,000,000 shares of said capital stock, and in less than six months thereafter said capital stock was reduced from $25,000,000 to $1,000,000. and the number of shares from 1,000,000 to 40,-000; that in furtherance of said conspiracy the said Daly on April 27, 1894, through his agents, procured to be conveyed unto himself all the property of said Bitter Root Development Company; that in the deed of transfer it appeared that said company, for and in consideration of $1, transferred all its property of every kind and description, real and personal, timber lands, timber-cutting privileges, and rights, etc.—in fact, everything belonging to the Bitter Root Development Company—to Marcus Daly; that four days later Daly deeded the same property to the Anaconda Mining Company for the express consideration of $1,442,379.46; that said Daly did in fact receive said named consideration, the whole thereof being the result of the spoliation of the lands of the appellant as aforesaid; that the money so received by him belonged in fact to the appellant, but that in fact said consideration was not all paid in cash, but a portion of the same was stock in said Anaconda Mining Company, but how much was cash, and how much was stock, the appellant is unable to state; that in furtherance of said conspiracy, on June 6, 1895, the defendants Kirkpatrick, Scallon, and Bromley, acting for and in behalf of said Daly, organized under the laws of the state of Montana the Anaconda Copper Company, with an organized capital stock of $30,000,000, consisting of 300,000 shares, and for the first three months of its existence the said Kirkpatrick, Scallon, Bromley, Donahue, Hoag, Hennessy, and Long were named as trustees; that nine days thereafter the same persons organized under the laws of said state the Anaconda Copper Mining Company, with an organized capital stock of $30,000,000, consisting of 1,200,000 shares, with the same set of trustees to manage its affairs for the first three months of its existence; that in the execution of said conspiracy and for the purpose of complicating the situation, said Daly, through his agents, within one year and twenty-nine days after having transferred his property to the Anaconda Mining Company, conveyed the identical property named in the deed to that corporation to the said Anaconda Copper Mining Company, for and in consideration of the sum of $1; that these several conveyances were made, in the main, in furtherance of said conspiracy, and for the purpose of so complicating the situation as to make detection difficult, if not impossible; that the conveyance by the Bitter Root Development Company to Daly of all its property for the consideration of $1 was fraudulent, and that the said Daly did, in the name of the Anaconda Copper Mining Company, carry on the same work of spoliation of the timber on said lands from the time of the conveyance of said property to said last-named corporation until the date of his death; that he continued to use the same means and the same mill, and the officers, directors, and stockholders of each of said corporations knew of the illegal work that had been done, and, so knowing, continued the same; that all of the corporate assets of every kind and character of the Bitter Root Development Company either appeared in the stock of the other corporations, or was appropriated by Daly and his assistants to their own use and benefit, but how much was carried over into the said corporations, and how much was divided previous to the last deed so referred to, and how much of the property of the appellant was converted by said last-named corporation, and how much thereof was appropriated by said company, and how much by Daly and his associates, it is impossible for the appellant to state; that, by reason of such spoliation carried on during a period of about ten years, the appellant has lost property of the value of $2,000,000 and upwards, and that said Marcus Daly and the other defendants named in the bill occasioned this loss by willfully trespassing on

the lands of the appellant without its consent, and in violation of law, and that they appropriated and converted to their own use the trees and timber growing thereon; that said defendants, or some of them, have at all times had, and now have, possession of the said sawmill, and they have received all proceeds from the sales of lumber, and divided the same among themselves; but by reason of the frauds so practiced, and their concealment, and by reason of said defendants having possession of all books of account, it is impossible for the appellant to set forth to a greater extent the details of the conspiracy, or to show when and by whom the particular acts of spoliation were performed, or just when and to whom the lumber was sold, or when and by whom the proceeds thereof were received; that, owing to the sparsely settled condition of such lands, and the imperfect means of the appellant to patrol and protect the same, said frauds and trespasses were not discovered until a comparatively short time before the filing of the bill.

The bill contains this averment: "Your orator further shows that it has commenced several actions at law in this honorable court to recover the value of the timber heretofore taken by the defendants, or some of them, from the lands above particularly described, and that the same are now pending in this court, but that by reason of the frauds and conspiracies above set forth, and the complications which have resulted therefrom, no plain, adequate, and complete remedy can be given your orator by said actions at law, and your orator is only relievable in a court of equity, where matters of this kind are properly cognizable and relievable."

The bill further alleges that Marcus Daly died on the 12th day of November, 1900, and left estate of the value of about $12,000,000 in Montana and elsewhere; that a large portion of said estate was the result and proceeds of said illegal acts; that he died testate, having named the defendant Margaret P. Daly his executrix; that his will was duly admitted to probate in the district court of the county of Deer Lodge, in Montana, and letters of administration were duly issued thereon to the said Margaret P. Daly, and that she is now the acting executrix; that said Margaret P. Daly, under and by virtue of the terms of said last will, is now the owner of a large portion of said estate.

The bill then prays for equitable relief: First, that Margaret P. Daly, both in her own person and as executrix, and each of the appellees, be decreed to hold in trust for the use and benefit of the appellant so much of their estate, both real and personal, as shall have come to them directly from the proceeds of the sale of said timber; second, that the appellant recover from said appellees the profits and gains and advantages which they have received or made by reason of said willful trespasses and fraudulent conversion of said timber; third, that each of said appellees make a full and true discovery and disclosure of and concerning the transactions aforesaid, and that an accounting be taken of all said dealings between the appellant and the appellees; that on said accounting the appellees be required to produce all licenses, permits, and all other documents of every kind and character which they may have received from the appellant, or by which they claim the right to enter upon any of said lands or to cut the timber therefrom; fourth, that they account for the number of logs received by them and manufactured into lumber at their said mill, or at any other mill owned or used by them; also the gains, profits, and advantages which have accrued to them from trespassing on said lands and converting said timber to their own use; fifth, that they account for all sums received on sales of such timber; sixth, that they set forth a list and description of all books of account, deeds, stockbooks, letters, papers, or writings relating to the matters aforesaid, or any of them, and that they deposit the same with the clerk of the court for the purpose of inspection by the appellant, and for all other legitimate and usual purposes; that upon such accounting the appellees be required to pay to the appellant all money derived by them from their participation in the conspiracy aforesaid, with interest thereon, and for such further relief as pertains to equity.

A demurrer was interposed to the bill for want of equity, and upon the further ground that the complainant therein had a full, complete, and adequate remedy at law for the recovery of damages for the alleged wrongs, and

also a full, complete, and adequate remedy at law for any discovery necessary or practicable in aid of an action at law.

P. C. Knox, Atty. Gen., M. C. Burch, Sp. Asst. Atty. Gen., Carl Rasch, U. S. Dist. Atty., and Fred A. Maynard, Sp. Asst. U. S. Atty.

W. W. Dixon, A. J. Campbell, A. J. Shores, C. F. Kelley, John F. Forbis, and L. O. Evans, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bill sets forth a series of trespasses, continuing over a period of some ten years, which are alleged to have been committed by all of the defendants jointly. The appellant had its remedy in such a case by an action of trespass to recover damages based upon the value of the standing timber when taken, or, if the trespass was knowingly and wrongfully committed, by an action in the nature of trover, to charge the appellees with the value of the timber, as manufactured into lumber. Woodenware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230. But the appellant, while admitting that it has a remedy at law to obtain redress for the acts complained of, denies that such remedy is as plain, speedy, or adequate as the remedy afforded by a suit in equity. The inadequacy of the legal remedy is said to consist in the trouble and difficulty of unraveling before a jury the devious and confusing methods adopted by the appellees in creating corporations, and in transferring property from one to the other thereof, and other devices to cover their tracks, and that these methods and devices may only be brought to light through an inspection of the books and records of those corporations. It is not denied that inspection of all of these books and records may be obtained in an action at law, but the contention is that it would be more convenient to present such complicated evidence in a suit in equity. But the greater convenience of the equitable remedy is no ground, in itself, for resorting to equity, or for depriving a party of his constitutional right to a jury trial. The controlling consideration is whether the equitable remedy will afford more complete or effectual relief in kind or degree than the legal remedy. If the remedy at law is "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity," it must be pursued. Insurance Company v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451, and cases there cited; Scott v. Neely, 140 U. S. 106, 110, 11 Sup. Ct. 712, 35 L. Ed. 358.

It is contended that the bill presents several grounds for equitable relief, one of which is the jurisdiction of a court of equity in matters of accounting. This, it is true, is one of the established grounds of equitable jurisdiction in cases where it is shown that an accounting cannot be fairly and adequately had in a court of law, or where there are fiduciary relations between the parties, or where the accounting is incident to recognized equitable relief sought by the bill. But there are no accounts in this case between appellant and appellees. The cause of action, as set forth in the bill, arises wholly in tort. A cause

of action arising in tort cannot be converted into a cause of action on an account at common law.    Sandeen v. K. Cy. & St. Jo. R. Co., 79 Mo. 278; Albertson v. Grier, 4 Houst. (Del.) 541; Western & Atlantic R. Co. v. Mead & Co., 4 Snead, 107; Spencer v. Hewett, 20 Ga. 426; Atchison, T. & S. F. R. Co. v. Wilkinson, 55 Kan. 83, 39 Pac. 1043. Nor can the appellant, by resorting to equity, convert its cause of action which arises on the facts disclosed in the bill into a suit in equity for an accounting.    In addition to this, no facts are alleged in the bill to show the necessity for an accounting.    It is not alleged in the bill that an accounting is necessary to enable the appellant to ascertain the quantity of timber that has been wrongfully cut from the premises described therein.    It is not even alleged that the desired accounting will develop such proof, nor is it alleged that the appellees cut no timber from lands other than those so described, or that they received no logs from other sources.    The prayer of the bill in this connection is that the plaintiff recover from the defendants the profits, gains, and advantages which they have received or made by reason of the said trespasses and conversion of the timber so cut.    The relief so prayed for is not obtainable upon the facts alleged by any form of suit or action.    The right of the appellant is confined to damages for trespass, or damages recoverable in an action in the nature of trover, in an amount to be based upon the actual value of the manufactured product, and not upon the amounts, gains, and profits received by the appellees.

But it is said that the bill presents a case of mutual accounts.    This is asserted upon the theory that the appellant had granted to the appellees licenses to cut timber on small portions of the tracts described in the bill, of which licenses the appellees took advantage to wrongfully cut timber from adjacent lands.    How this presents a case of mutual accounts, we are unable to see.    The acts with which the appellees are charged are a series of torts.    As to the lands on which licenses were given to cut timber, no demand for damages for such cutting can arise in favor of the appellant, and as to those lands no relief is sought. Those transactions can occupy no place in an accounting.

It is claimed that the bill may be sustained on the ground that it is brought to establish a trust.    The cases of Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152, and The American Sugar Refining Co. v. Fancher, 145 N. Y. 552, 40 N. E. 206, 27 L. R. A. 757, are cited to sustain the doctrine that such a trust may arise through a tort.    In the first of those cases it was held that the owner of negotiable securities stolen, and afterwards sold by the thief, might follow and claim the proceeds in the hands of the felonious taker, and that this right attached to any securities or property in which the proceeds may have been invested, so long as such proceeds could be traced and identified.    But in that case the original tort feasor was insolvent.    There was no remedy at law. No redress was possible unless the owner could proceed in equity to charge with a trust the property in which the stolen securities were invested.    So, in the case of The American Sugar Refining Co. v. Fancher, the sale of personal property had been induced by fraud on the part of the vendee, and the property was by him sold to another.    The proceeds of the sale were specifically identified in the hands of the latter.    Since the vendee was wholly insolvent, it was held that a court

of equity had a remedy to reach such proceeds and apply them for the benefit of the defrauded vendor. No such facts are presented in the present case. It is not alleged that any of the defendants is insolvent. On the contrary, it is shown that the estate of Marcus Daly, who, according to the allegations of the bill, was the initiator and principal actor in all the trespasses so complained of, and who, as one of the joint tort feasors, would be chargeable with the whole of the damages recoverable on account thereof, amounts to $12,000,000. Nor is it alleged in the bill that the profits fraudulently obtained by the appellees through the tort complained of have been invested or are now discoverable in any particular form of property which might be charged with a trust in invitum.

It is said that on the allegations of the bill the appellant is entitled to a discovery. But the appellant's remedy having been, as we have seen, an action at law, there is no necessity for resorting to equity to procure discovery in aid thereof. It has been held that in ordinary cases a pure bill of discovery cannot be maintained in the equity courts of the United States, for the reason that section 724 of the Revised Statutes [U. S. Comp. St. 1901, p. 583] renders it no longer necessary. Ex parte Boyd, 105 U. S. 647, 26 L. Ed. 1200; Rindskopf v. Platto (C. C.) 29 Fed. 130; United States v. McLaughlin (C. C.) 24 Fed. 823; Preston v. Smith (C. C.) 26 Fed. 885; Paton v. Majors (C. C.) 46 Fed. 210. Section 724 of the Revised Statutes enables a plaintiff in an action at law to obtain in that action all discovery of books, papers, and documents, as fully as it could be done in a suit in equity. Again, it is the settled rule that the federal courts are without jurisdiction of a suit for the discovery of evidence to be used in the enforcement of a legal demand. In Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, the court said:

"The Constitution, in its seventh amendment, declares that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. In the federal courts this right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim properly cognizable at law of a demand for equitable relief in aid of the legal action, or during its pendency. Such aid in the federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact."

In Safford v. Ensign Mfg. Co., 120 Fed. 480, 56 C. C A. 630, it was held that a federal court is without jurisdiction of a suit in which discovery and relief are sought, but the only ground for equitable relief appears to be the discovery of evidence to be used in the enforcement of a purely legal demand.

It is contended that the bill may be sustained for the reason that Margaret P. Daly is sued as executrix of the estate of Marcus Daly, deceased. It is true that courts of equity have exercised jurisdiction over controversies in which executors and administrators are parties defendant. But it is only in cases where such personal representatives are to be considered trustees for the heirs, legatees, devisees, or creditors. According to the allegations of the bill, Margaret P. Daly is not a trustee for the appellant. The appellant presents a claim for unliquidated damages. Margaret P. Daly is made a party defendant

only for the reason that she is the personal representative of Marcus Daly, who was the principal tort feasor, according to the averments of the bill. She has the same right to a trial by jury that her husband would have had if living. There is no charge of fraud against Margaret P. Daly, as executrix, and no discovery of the assets of the estate in her hands is required. According to the bill, she is possessed of ample funds to meet the whole of the demand of the appellant.

The decree of the Circuit Court is affirmed.