E. G. BEECHWOOD ICE CO. v. AMERICAN ICE CO.

(Circuit Court, D. Maine. February 9, 1910.)

No. 44.

1. WATERS AND WATER COURSES (§ 296*)—ICE—RIGHTS OF RIPARIAN PROPRIETORS—ARTIFICIAL PONDS.

An owner of land on a stream which is flowed by a dam on the land of a lower proprietor, built with his consent, but for the benefit of the lower owner, is the owner of the ice formed on his land.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 333; Dec. Dig. § 296.*]

2. WATERS AND WATER COURSES (§ 298*)—CUTTING ICE ON LAND OF ANOTHER.

An owner of land on a stream which built a dam forming an ice pond, which extended over land of an upper proprietor, held on the evidence to have committed a willful trespass in cutting ice on the land of the other owner.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § §§ 335–337; Dec. Dig. § 298.*]

3. WATERS AND WATER COURSES (§ 298*)—MEASURE OF DAMAGES—CUTTING AND REMOVAL OF ICE.

Plaintiff was lessee of an ice pond in Maine, from which defendant willfully harvested the ice, and afterward shipped it to New York City. Held that, the trespass being willful, plaintiff had the right to fix the time of the conversion at its election, and that, on demand for the ice after its arrival in New York, it could maintain trover for its value there.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 335; Dec. Dig. § 298.*]

Action by the E. G. Beechwood Ice Company against the American Ice Company. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Benjamin Thompson, for plaintiff.
Charles F. Johnson, for defendant.

HALE, District Judge. In this action of trover the plaintiff seeks to recover the value of 4,000 tons of ice, alleged to have been willfully and intentionally converted by the defendant to its own use, at New York City, on the 9th day of August, 1906. The plea is the general issue. The parties have filed a written stipulation, waiving a jury.

The case shows that the ice in question was cut from the upper part of Barberry creek, an indentation of Portland Harbor upon the South Portland side. The defendant company owns the land on both sides of this creek near the outlet. In order to make it available as an ice pond, under legislative authority, the former owner of the privilege, and a predecessor in title to the defendant company, built a dam across the mouth of the creek, near the Boston & Maine Railroad location, in such a way as to exclude the salt water, and create a pond on this property of about 18 acres in extent. Above this property is land owned by Thomas B. Haskell. Before the dam was built at the outlet of the creek, the Haskell portion of Barberry creek had been used for a long time for the purpose of harvesting ice; and, when so used, a dam was maintained across the creek near the old Kennebec Railroad crossing, which was very near the dividing line between the Haskell and the American Ice Company properties. In consequence of the dam at the outlet, built by the defendant company, the fresh water flows back over the Haskell property to the depth of five or six feet, and makes a pond over this property covering an area of about 10 acres. In 1895 Thomas B. Haskell entered into a lease or agreement with the predecessor of the American Ice Company, giving the company the right to flow the land with fresh water, together with the right to build and maintain its dam at the outlet, and to take off the ice for five years. Since the expiration of the lease the defendant company has never claimed a right to the ice on the Haskell part of the pond, and does not now claim it. In 1904 Mr. Haskell leased to the plaintiff corporation the exclusive right to take off the ice from his property for five years.

The plaintiff's title to the ice cut in 1906 is unquestioned. Although the dam which caused the flowing of the property was not on the Haskell property, but was at the outlet of the pond, this fact does not affect the title of Haskell's lessee to the ice formed on this part of Barberry creek. The plaintiff company had the right of possession of the land, of the water over the land, and of the water after it had frozen into ice. Barrett v. Ice Co., 84 Me. 155, 156, 24 Atl. 802, 16 L. R. A. 774; McFadden v. Ice Co., 86 Me. 319, 29 Atl. 1068; Paine v. Woods, 108 Mass. 160, 173; Stevens v. Kelley, 78 Me. 445, 449, 6 Atl. 868, 57 Am. Rep. 813; Richards v. Gauffret, 145 Mass. 486, 488, 14 N. E. 535; U. S. v. Loughrey, 172 U. S. 206, 19 Sup. Ct. 153, 43 L. Ed. 420. Four thousand tons of ice were taken by the defendant company from this property in March, 1906. The taking is not denied. A sharp contention is made as to the character of the taking.

1. Was the taking of the ice on the part of the defendant company a willful trespass? The defendant says that the ice was taken with the honest belief on its part that it had rights in the ice on the Haskell part of Barberry creek. It therefore claims that the taking was done in good faith, under the reasonable belief that its conduct was rightful. The fact of taking having been shown, the burden of proving good faith rests upon the defendant. Trustees of Dartmouth College v. International Paper Co. (C. C.) 132 Fed. 92, 97. On the question of the character of the trespass, whether willful or not, there is a conflict of testimony. There is no necessity for discussing the evidence bearing upon this subject. The court comes to the conclusion that the defendant has not met the burden of showing good faith in the taking. There may be some question as to whether the original entry upon plaintiff's property by the defendant was with full knowledge that it did not have a right there. But from the whole evidence the court finds that afterwards, and before the removal of the ice, the defendant had unmistakable knowledge of plaintiff's ownership of the ice. The testimony shows it was warned not to continue to cut, and not to remove what had been cut. The whole evidence leads me to the conclusion that from the first the defendant unreasonably refrained from inquiring as to the nature of its supposed rights. I think it may be said in this case, as was said in the International Paper Company Case, to which I have referred, that the defendant acted without reasonable care and investigation. The inevitable conclusion of the court, drawn from the full evidence, is that the defendant's trespass late in March, 1906, was willful.

2. The plaintiff made his demand upon the American Ice Company on August 9, 1906, in New York City, and brought suit alleging a conversion of the ice in New York City on that day. This is an action in trover, the gist of which is the conversion by the defendant of goods to which the defendant had then and there the right of possession. The plaintiff invokes the theory of the law that in unlawfully taking the plaintiff's ice the defendant did not acquire any title to it, or ownership in it; but that, on the contrary, the plaintiff still continued to own the property, and hence had the right to retake it wherever it could be found; that if the plaintiff found the property in the city of New York it could there claim it, and there retake it, and could replevy it there if necessary; that it could do this, even though greater value had been put upon the property by a complete change in its form and character; and that if it could replevy goods, even though they had been changed and improved in their character, it might clearly make its demand and pursue its remedy by an action of trover, instead of by an action of replevin. This gives the plaintiff the right to determine the form of action which it shall adopt in order to secure redress for a willful trespass. The leading case in the federal courts upon the question of damages for willful trespass is Bolles Wooden Ware Company v. U. S., 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, which holds that a willful trespasser is liable for the full value of the property at the time and place of demand or suit brought, and with no deduction for his labor and expense put upon it. This, at first,

seems a hard rule; but, if a defendant were held for only the actual value of the property which he has willfully taken, the ends of justice would not be met. An unprincipled ice manufacturer might willfully take a competitor's ice, and be glad to suffer the consequence of paying merely a fair value of the ice at the place of taking. Such a result would be neither just nor salutary. If that were the rule of damages in case of willful trespass, the logical result would be that large corporations might drive their rivals out of business by simply harvesting the ice in the ponds upon which their competitors depend for their source of supply; for such corporations would suffer only the damage of paying what they would have paid if they had purchased the ice in the open market. And so the courts have generally, although not invariably, followed the rule of the Wooden Ware Company Case. For illustration, if trees are willfully cut from a person's lot, and afterwards manufactured into expensive commodities, the plaintiff may retake the goods, even after the improvements have been put upon them; or he may sue in trover for their value at the date which he fixes upon as the time of the conversion. U. S. v. Mills (C. C.) 9 Fed. 684. If corn has been willfully taken from a person's field, and afterwards manufactured into whisky, the whisky may be retaken, or its value may be sued for in trover; and the time of the conversion may be fixed by the plaintiff. Silsbury v. McCoon, 3 N. Y. 379, 53 Am. Dec. 307. The theory is that the defendant gets no title to the thing which he obtains by willful trespass; that the property still belongs to the owner, who may seize it wherever he finds it. The defendant is a wrongdoer, and cannot complain if he loses the property unlawfully taken, and loses also the added value which has been placed upon it. The plaintiff may fix the time of the conversion after the property has been improved, and may thus have the added value of the property. Wooden Ware Case, supra; Trustees of Dartmouth College v. International Paper Company, supra; U. S. v. Mills (C. C.) 9 Fed. 684; U. S. v. Heilner (C. C.) 26 Fed. 80, 82; U. S. v. Bitter Root Development Company, 133 Fed. 274, 278, 66 C. C. A. 652; Adams v. Blodgett, 47 N. H. 219, 221, 90 Am. Dec. 569; Foote v. Merrill, 54 N. H. 490, 491, 20 Am. Rep. 151; Final v. Backus, 18 Mich. 218; Pine River Logging Company v. U. S., 186 U. S. 279, 294, 22 Sup. Ct. 920, 46 L. Ed. 1164. The federal courts recognize the Wooden Ware Case as of final authority.

In the case at bar the defendant urges that this may be the proper rule of damages as applied to timber and hides, but, as applied to ice, it is grossly inequitable, and exposes the defendant to undue severity. The court cannot think so. A defendant who has unlawfully taken timber may be exposed to very greatly increased damages from the added value that the unlawfully converted timber may have when manufactured into pulp and fine grade paper. But from the nature of the product ice cannot be changed into very expensive commodities. The increased value of the ice comes from the fact that suit may be brought at a distant point, in a large city, where a greater price may be obtained from the added expense of freight and of other expenditures. But, on the other hand, the owner of the ice can retake or sue for only

the ice that he can find; and in many cases the ice, from its nature, has melted or wasted, and the owner is thereby put to some disadvantage in pursuing his remedy.

3. What was the value of the ice in New York on the 9th day of August, 1906? It is necessary first for the court to inquire what ice was in New York, for which the demand was made, and for which the suit was brought. The case shows that 4,000 tons of ice were cut. The case shows, also, that the ice taken from the plaintiff's pond was stored in the top tiers of the rooms of the icehouses in which it was placed, and where it would be subject to great waste. The testimony convinces the court that it was soft ice, cut in the spring, and that there would be large waste. I understand the plaintiff to admit that not more than 2,400 tons of ice would remain after it was taken in New York. From the whole testimony I think this is certainly not allowing too much for waste. What was the character of this ice? The testimony shows that it was of an inferior character; that it had cinders and dirt in it; that it was soft; and that it was not of a merchantable character. There is testimony as to the value of the best marketable ice in New York at the time of the demand; but the price of good ice affords very little assistance to the court in coming to a conclusion as to what was the value of the ice in question. There is, however, some evidence as to the character of the ice. It clearly could have been no better ice in New York than it was at the ice pond. If it was soft ice at Barberry creek, it certainly was not less soft in New York. If there were cinders and dirt in it at the ice field, it would be subject to the same conditions in New York. The plaintiff urges that the omission of the defendant to offer evidence within his reach as to the value of this ice is entitled to consideration, and may be regarded as in the nature of an admission. I do not think that this can be said to be a case where evidence has been held back, and where there should be a presumption against the defendant for this reason. Here there is evidence touching the character, and, to some extent, as to the value, of the ice in New York. The testimony as to the value of marketable ice in New York cannot control; and, while the whole evidence as to the value of this ice is unsatisfactory, it is of some value. In my opinion it would be a gross exercise of arbitrary power for me to say that it had a value approaching the value of first-class marketable ice. It had a small value at the pond. At the point where demand was made it had the added value of packing, shipping, and of carriage to New York. After carefully examining all the testimony in the case upon this point, I fix the value of the ice in New York at the time of the demand at $2.50 per ton. The value of the 2,400 tons is, then, $6,000. To this should be added interest from August 9, 1906, to February 9, 1910, $1,260. The whole value of the ice, with interest, then, is $7,260, and for this sum the plaintiff is entitled to judgment. Judgment may therefore be entered for the plaintiff for the sum of $7,260.